UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTOINE SIMPSON,

               Petitioner,                       Case Number: 10-12343
                                                Honorable David M. Lawson

v.

CINDI CURTIN,

               Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Antoine Simpson, a prisoner in the custody of the Michigan Department of Corrections, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his burglary, assault, and firearms convictions and sentences. He argues that the evidence presented at trial was insufficient to convict him of burglary and assault, the sentences violate the ban on cruel and unusual punishment, the trial court violated the petitioner's right to confront his accusers, the in-court identification was tainted by unduly suggestive pretrial identification procedures, appellate counsel was ineffective, and the petitioner is actually innocent. The respondent has filed an answer to the petition contending that the renewed petition is untimely, the claims regarding the right to confront one's accuser and the identification procedures are procedurally defaulted, and that all of the claims are meritless. The Court finds that the petitioner's claims lack merit. The Court, therefore, will deny the petition.

I.

The petitioner was charged with and convicted of the following offenses after a jury trial in the Oakland County, Michigan circuit court: assault with intent to rob while armed, Mich. Comp. Laws § 750.89; first-degree home invasion, Mich. Comp. Laws, § 750.110a(2); assaulting, resisting,

or obstructing a police officer, Mich. Comp. Laws § 750.81d(1); and five counts of felony firearm,

Mich. Comp. Laws § 750.227b.  The Michigan Court of Appeals set forth the relevant facts as

follows:

> On March 6, 2007, Demetria Hodges waited in her apartment for her boyfriend, Jamaal Walker, to arrive.  Hodges heard noises outside the apartment door, but did not see anyone through the peephole.  When Hodges looked out a window she observed Walker's car in the parking lot.  Hodges tried unsuccessfully to contact Walker on his cell phone.  When Hodges again went to look through the peephole she saw Walker.  After she unlocked the door, Walker entered the apartment with defendant, who held a gun to the side of Walker's head.
>
> Defendant queried Walker, "Where is the money?" Defendant then pointed the gun at Hodges, told her that she was not involved, and demanded that she go into the bathroom and close the door.  From the bathroom, Hodges listened as defendant searched through the apartment.  When she heard the apartment door close, Hodges left the bathroom and from the apartment window, saw defendant and Walker in the parking lot.  Hodges phoned the police, who located defendant and arrested him in a building within the apartment complex.  Defendant did not cooperate with the police, but when ultimately secured the police retrieved from on or near defendant a gun, cash, two cellular phones and a bag of marijuana.  A search of Walker's vehicle revealed another firearm and drug paraphernalia.

*People v. Simpson*, No. 279353, 2009 WL 349750, at *1 (Mich. Ct. App. Feb. 12, 2009).

A police detective was interviewing Demetria Hodges when the petitioner was apprehended.

The detective transported her to the adjacent apartment building, where Hodges observed the

petitioner exiting the back of a police car; she identified him as the perpetrator.  Hodges testified at

trial, but some of her out-of-court verbal and written statements were admitted in evidence as well.

The trial court sentenced the petitioner to concurrent prison terms of 15 to 40 years for

assault with intent to rob while armed, 10 to 20 years for first-degree home invasion, and one to two

years for assaulting, resisting, or obstructing a police officer.  The court imposed two-year prison

terms for each of the five counts of felony firearm to be served concurrently with one another and

consecutively to the other convictions.

On direct appeal to the Michigan Court of Appeals, the petitioner argued that (i) sufficient evidence was not presented to sustain the home invasion and assault convictions; and (ii) the sentences are disproportionate and violate the ban on cruel and unusual punishment. The Michigan Court of Appeals affirmed the convictions. *People v. Simpson*, No. 279353, 2009 WL 349750 (Mich. Ct. App. Feb. 12, 2009). The petitioner filed an application for leave to appeal in the Michigan Supreme Court raising those same claims plus an ineffective assistance of counsel claim. The Michigan Supreme Court denied leave to appeal, *People v. Simpson*, No. 138546, 483 Mich. 1114 (Mich. June 23, 2009), and denied a motion for reconsideration. *People v. Simpson*, 485 Mich. 932 (Mich. Oct. 26, 2009).

The petitioner then filed a habeas corpus petition in this Court raising his sufficiency of evidence and sentencing claims. Shortly after filing his petition, the petitioner sought and obtained a stay of these proceedings to allow him to file a state court post-conviction motion raising additional claims that he later planned to add to his habeas petition.

The petitioner filed a motion for relief from judgment in the state court arguing that (i) the trial court violated the petitioner's right to confront his accuser; (ii) the in-court identification by a witness at trial was irreparably tainted; (iii) appellate counsel was ineffective; and (iv) he is actually innocent. The trial court denied the motion. *People v. Simpson*, No. 07-213931-FC (Oakland County Cir. Ct. Jan. 31, 2011). The petitioner's applications for leave to appeal were denied by the Michigan Court of Appeals, *People v. Simpson*, No. 304511 (Mich. Ct. App. Dec. 19, 2011), and the Michigan Supreme Court. *People v. Simpson*, 492 Mich. 854 (Mich. July 24, 2012).

The petitioner then moved in this Court to reopen this proceeding and to file an amended habeas petition. The Court reopened this proceeding and accepted the amended petition for filing. The amended petition presents the following claims:

I.     Insufficient evidence was presented to sustain the petitioner's assault and home invasion convictions;

II.    The sentences are disproportionate and constitute cruel and unusual punishment;

III.   The trial court denied the petitioner's right to confront his accuser;

IV.    The in-court identification was tainted by suggestive out-of-court identification;

V.     Appellate counsel was ineffective; and

VI.    The petitioner is actually innocent.

Amend. Ptn. at 9.

The respondent filed an answer contesting the timeliness and the merits of the amended petition, and raising a procedural default defense to the third and fourth issues.

The Court finds it unnecessary to address the question of procedural default. It is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ( citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Application of a procedural bar would not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## II.

The respondent argues that the petition is untimely because the petitioner failed to comply with the terms of the stay this Court granted. The stay required the petitioner to file a motion for

-4-

relief from judgment in the trial court within two months and file an amended petition in this Court within 28 days after the conclusion of state court proceedings. The petitioner clearly complied with the first requirement, but, as respondent correctly argues, he did not file an amended petition in this Court within 28 days after the state court post-conviction proceedings ended. The petitioner completed state court collateral review on July 24, 2012, when the Michigan Supreme Court denied his application for leave to appeal the trial court's denial of his motion for relief from judgment. The petitioner moved to reopen this proceeding on September 26, 2012, approximately one month beyond the prescribed 28-day time period. The respondent argues that the delay in returning to this Court should void any equitable tolling afforded the petitioner by the stay order and that the petition, therefore, is untimely. But the statute of limitations does not constitute a jurisdictional bar to habeas review, and a federal court, in the interest of judicial economy, can proceed to the merits of a habeas petition. *See Smith v. State of Ohio Dept. of Rehabilitation*, 463 F.3d 426, 429, n. 2 (6th Cir. 2006) (quoting *Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir. 2006)). That is how the Court will proceed here.

III.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because Simpson's petition was filed after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's

-5-

adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions."  *White v. Woodall*, --- U.S. ---, 134 S.Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, --- U.S. ---, 131 S.Ct. 770, 786-87 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Dewald v. Wrigglesworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205

-6-

(6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594–95 (6th Cir.2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, --- U.S.---, 131 S.Ct. 1388, 1398 (2011).

A.

The petitioner argues that the prosecutor presented insufficient evidence to sustain his convictions for first-degree home invasion and assault with intent to rob while armed.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  According to the Supreme Court, a sufficiency of evidence challenge must focus on whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16)).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, (citing *Jackson,* 443

-7-

U.S. at 319).  Second, if the Court were "to conclude that a rational trier of fact could not have found

a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the

state appellate court's sufficiency determination as long as it is not unreasonable." *Ibid.*   The

*Jackson* standard is "exceedingly general" and therefore Michigan courts are afforded "considerable

leeway" in its application.   *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011).

> Under Michigan law, first-degree home invasion can be established in various ways.
>
> The alternative elements of first-degree home invasion can be broken down as follows:
> Element One: The defendant either:
> 1. breaks and enters a dwelling or
> 2. enters a dwelling without permission.
>
> Element Two: The defendant either:
> 1. intends when entering to commit a felony, larceny, or assault in the dwelling or
> 2. at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault.
>
> Element Three: While the defendant is entering, present in, or exiting the dwelling, either:
> 1. the defendant is armed with a dangerous weapon or
> 2. another person is lawfully present in the dwelling.

*People v. Wilder*, 485 Mich. 35, 43, 780 N.W.2d 265, 269 (2010).  The elements of assault with

intent to rob while armed, are: "'(1) an assault with force and violence; (2) an intent to rob or steal;

and (3) the defendant's being armed.'"  *People v. Akins*, 259 Mich. App 545, 554 (2003), quoting

*People v. Cotton*, 191 Mich. App. 377, 391, 478 N.W.2d 681, 688 (1991).

On direct appeal, the state court of appeals held that sufficient evidence was presented to

sustain the petitioner's conviction for first-degree home invasion:

> Defendant argues that the circumstantial evidence offered by the prosecution in this case is insufficient to satisfy the elements of a first-degree home invasion charge, in part because the evidence offered by the prosecution was not credible.  However, circumstantial evidence and the reasonable inferences drawn from that evidence are

-8-

sufficient to prove the elements of a crime. *People v. Schumacher*, 276 Mich. App. 165, 167; 740 N.W.2d 534 (2007). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v. Hardiman*, 466 Mich. 417, 428; 646 N.W.2d 158 (2002).

Hodges's testimony that she intended to admit Walker but not defendant into the apartment satisfied the breaking and entering component of home invasion. Defendant's actions in searching through the apartment and demanding money while brandishing a gun allowed the trier of fact to reasonably infer that defendant had the intent to commit a felony, larceny or assault while in the residence, and thus established the second element of home invasion. The evidence of Hodges's lawful presence in the apartment and defendant's possession of a weapon amply established the final element of first-degree home invasion. Accordingly, sufficient evidence supported defendant's conviction of this crime.

*Simpson*, 2009 WL 349750 at *2.

The petitioner argues that Demetria Hodges's testimony was not credible, and therefore the evidence was not sufficient. However, "[a] reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326). The decision of the Michigan Court of Appeals applied the correct constitutional test, relied on facts amply supported in the record, and did not unreasonably apply clearly established constitutional law.

The petitioner also argues that insufficient evidence was presented to convict him of assault with intent to rob Hodges. The petitioner was acquitted of that charge, but convicted of assault with intent to rob Walker. Even assuming that the petitioner intended to challenge the sufficiency of his

-9-

conviction for assault with intent to rob Walker while armed, that claim is meritless. Hodges testified that the petitioner was holding a gun to Walker's neck when he entered her apartment and that, once in her apartment, he demanded to know where the money was. Viewing the testimony in the light most favorable to the prosecution, Hodges' testimony was sufficient to establish each element of assault with intent to rob Walker while armed.

## B.

The petitioner next argues that his sentences are disproportionate and violates the Eighth Amendment's ban on cruel and unusual punishment. There is no Eighth Amendment violation here.

There exists no constitutional right to strict proportionality in sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). However, the Eighth Amendment prohibits "extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001 (Kennedy, J. concurring) (quoting *Solem v. Helm*, 463 U.S. 277, 288, 303 (1983)). The Sixth Circuit has held that "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62-63 (6th Cir. 1995); *see also Hutto v. Davis*, 454 U.S. 370, 374 (1982) (cautioning that "federal courts should be reluctant to review legislatively mandated terms of imprisonment and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare") (internal quotation marks omitted). The petitioner's sentences did not exceed the statutory maximum for his offenses. The petitioner's sentences were not grossly disproportionate to the crimes or the offender.

## C.

In his third claim, the petitioner alleges a violation of his right to confront the witnesses against him. He argues that he was not permitted to hear Demetria Hodges's testimony as to what

-10-

occurred and he objects to the admission of her out-of-court verbal and written statements because they were testimonial in nature. There is no merit to this argument, however, because even if Hodges's out-of-court statements were presented to the jury, Hodges testified at trial and was subject to cross-examination.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Id.* at 404-05 (internal quotation omitted). The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" *Id.* at 405 (quoting *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965)).

In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination, regardless of whether the trial court finds the statements to be reliable. In this case, Demetria Hodges testified at trial and was cross-examined by the petitioner's attorney. "[N]one of [the Supreme Court's] decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial." *California v. Green*, 399 U.S. 149, 161 (1970). On the contrary, "where the declarant is not absent, but is present to testify and submit to

-11-

cross-examination, our cases, if anything, support the conclusion that the admission of [the witness's] out-of-court statements does not create a confrontation problem." *Id.* at 162. *Crawford* did not change that rule. *Crawford*, 541 U.S. at 59 n.9.

The last state court reasoned opinion addressing the petitioner's Confrontation Clause claims was the trial court's order denying the petitioner's motion for relief from judgment. The trial court found no basis for the petitioner's argument that he did not have the opportunity to confront his accuser because defense counsel cross-examined and re-cross-examined Hodges. The state court's analysis correctly applied *Crawford*. Because Hodges testified at trial, admission of her out-of-court verbal and written statements did not create a confrontation problem. The petitioner is not entitled to habeas relief on this claim.

### D.

The petitioner's fourth habeas claim focuses on the admission of Hodges' identification testimony. He argues that the in-court identification was tainted by an impermissibly suggestive identification procedure. Shortly after police responded to Hodges' 911 call, the petitioner was apprehended in an adjacent apartment building. A police officer who had been interviewing Hodges drove her to the adjacent building to view the suspect. Hodges remained in the police car and observed the petitioner exit the back of another police vehicle. She then identified him as the man who had entered her apartment. The petitioner argues that the encounter was suggestive and corrupted Hodges's in-court identification of him.

Due process requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, --- U.S. ---, 132 S.Ct. 716, 718 (2012). A pretrial identification violates due

process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977) (holding that due process challenges to identification procedures are reviewed using the *Biggers* test). But the Supreme Court has held that suppression of the tainted identification is not necessarily the inevitable consequence of suggestive pretrial identification procedures. *Braithwaite,* 432 U.S. at 112-113. Instead, determining whether suppression is required is a case-by-case exercise. *Id.* at 116; *see also Biggers*, 409 U.S. at 201.

The evil to be avoided is that an initial improper identification procedure will result in misidentification and will unduly influence later investigation. *United States v. Wade*, 388 U.S. 218, 229 (1967). "[T]he dangers for the suspect are particularly grave when the witness's opportunity for observation was insubstantial, and thus his susceptibility to suggestion is the greatest." *Ibid.* Therefore, "reliability is the linchpin in determining the admissibility of identification testimony. *Brathwaite*, 432 U.S. at 114.

The trial court (the last state court to issue a reasoned opinion on this claim) held that the identification procedure was not impermissibly suggestive:

> [D]efendant states that the officers used suggestive identification to elicit the witness's first positive identification of defendant because the[re] was no array of photographs only the officers presenting defendant to the victim with a statement that he was the man responsible for the robbery. . . . In *People v. Winters*, 225 Mich. App. 718, 721-722, 728 (1997), the Court of Appeals held that prompt, on-the-scene identifications are reasonable, "indeed indispensable, police practices because they permit the police to immediately decide whether there is a reasonable likelihood that the suspect is connected with the crime, and subject to arrest, or merely an unfortunate victim of circumstance." In *People v. Libbett*, 251 Mich. App. 353, 412 (2002), citing *Winters, supra* at 728, the Court of Appeals stated that, "one of the main benefits of prompt on-the-scene identifications is to obtain reliability in the apprehension of suspects, which insures both that the police have the actual

-13-

perpetrator and that any improvidently detained individual can be immediately released."  A defendant can challenge an identification based on constitutional grounds if it was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [it] amounts to a denial of due process."  *Winters*, *supra* at 725, citing *Stovall v. Denno*, 388 U.S. 293 (1967).  In analyzing this question, the court must look at whether there was undue suggestion "in light of all of the circumstances surrounding the identification."[]  *People v. Kurylczyk,* 443 Mich. 289, 306 (1993) (addressing whether a photographic lineup was unduly suggestive).  Here, the victim testified that the police came back to her apartment the same night that the crime occurred and asked her to go downstairs to identify the person in custody as her assailant. . . . The victim testified as to the clothing — brown leather jacket with a hood up on his head — that her assailant was wearing during the crime. . . . The victim also testified that the reason she told the 911 operator that she did not know what the defendant looked like was because she wanted them to send somebody to her apartment. . . . Officer Niedjelski testified that he spotted a black male in a dark brown leather jacket with fur around the collar walking around the victim's apartment complex. . . . Finally, the on-the-scene identification[] was made shortly after defendant fled the crime scene and fled from the apprehending officer.  Based on the totality of these circumstances, there is no indication that the victim's identification of defendant was unduly influence[d].

*People v. Simpson*, No. 07-213931, Opinion and Order at 6-8.

The Sixth Circuit has held that an on-the-scene identification involving only a single suspect does not violate due process.  *Bruner v. Perini*, 875 F.2d 531, 534-35 (6th Cir. 1989).  In *Bruner*, a bank employee who had given the police a description of a robber was taken to the scene of a suspect's apprehension thirty minutes after the robbery.  She identified the suspect as the robber. The court found no due process violation.  Similarly, in *Stidham v. Wingo*, 482 F.2d 817, 818-19 (6th Cir. 1973), the Sixth Circuit held it permissible for a robbery victim to be taken immediately to the scene of a suspect's arrest to identify him.  *See also Simmons v. Unites States*, 390 U.S. 377, 384 (1968) (condoning on-the-scene identification procedures immediately following a crime, because they may be "sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them"); *United States. v. Bautista*, 23 F.3d 726, 730 (2d Cir. 1994) ("[A] prompt showing of a detained suspect at the scene of arrest has a very valid function: to prevent the

-14-

mistaken arrest of innocent persons." (citations omitted)).   The general approach in such cases is to lay out the facts and circumstances of the identification, and allow the jury to assess the reliability of the witness's identification.   *Perry*, 132 S.Ct. at 725; *see also Foster v. California*, 394 U.S. 440, 442 n. 2 (1969) ("The reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury.").

Here, Hodges had a good look at the perpetrator's face, in close proximity when he entered her home.   Hodges's description of the jacket worn by the perpetrator matched the clothing worn by the suspect found hiding in the adjacent apartment building.   The suspect — the petitioner — fled the police and was found carrying a weapon.   The trial court's description of the events — that the victim said that the police came to her apartment on the night of the crime and "asked her to go downstairs to identify the person in custody as her assailant" — presents a much more suggestive characterization of Hodges' testimony than is reflected in the record.   Hodges testified only that the police took her outside to look at somebody.   She did not testify that the person was identified to her as her assailant.   The state court's application of Supreme Court precedent was not unreasonable, nor was its conclusion that the identification procedure was not unduly suggestive.   Habeas relief will not be granted on this issue.

## E.

Next, the petitioner claims that his attorney's failure to raise his third and fourth claims on direct review constitutes ineffective assistance of counsel.   The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous

-15-

issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard." *Id.* at 754. Strategic and tactical choices on the issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The petitioner claims that appellate counsel was ineffective by failing to raise on direct review the claims the petitioner raised on collateral review and in his habeas petition. But none of those claims was potentially meritorious. Therefore, the petitioner cannot show that his appellate attorney was ineffective for failing to raise them on direct appeal.

F.

Finally, the petitioner asserts a claim of actual innocence in an attempt to excuse the procedural default of his third and fourth claims. Because the Court has found that none of the petitioner's other claims are subject to procedural default, this claim is moot. However, even if the claim were considered as a freestanding claim of actual innocence, it does not present a ground for granting habeas relief. According to well-established Sixth Circuit precedent, the petitioner faces an insurmountable obstacle in attempting to advance this claim. *See Cress v. Palmer*, 484 F.3d 844, 853–55 (6th Cir. 2007). The Supreme Court has stated that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. . . . [F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution — not to correct errors of fact." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). In

-16-

*dictum*, the *Herrera* court indicated that an actual innocence claim might be cognizable "if there were no state avenue open to process such a claim." *Herrera*, 506 U.S. at 417. The Supreme Court noted, however, that even if such a claim were cognizable, the threshold showing "would necessarily be extraordinarily high." *Ibid.*

The petitioner makes no such showing. He offers no new reliable evidence to support a claim of innocence. Habeas relief is not warranted on this claim.

IV.

For the reasons stated, the Court concludes that the state court did not contradict or unreasonably apply federal law as determined by the Supreme Court. Therefore, the petitioner has not established that he is presently in custody in violation of the Constitution of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 8, 2014

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 8, 2014.

s/Shawntel Jackson
SHAWNTEL JACKSON

---

-17-